UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | |
|---|---|
| FLOYD RUSSELL ADAMS, JR., ) )  Petitioner, ) ) V. ) ) WARDEN JOYNER, ) )  Respondent. ) | Case No. 7:19-cv-106-JMH  **MEMORANDUM OPINION AND ORDER** |

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

Petitioner Floyd Russell Adams, Jr., is a federal prisoner currently confined at the United States Penitentiary ("USP")-Big Sandy located in Inez, Kentucky. Proceeding without an attorney, Adams has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his sentence by the Bureau of Prisons ("BOP"). [DE 1]. Respondent has filed his response to the petition. [DE 13]. Adams has not filed a reply to the response, and the time for doing so has expired. Thus, this matter is ripe for review.

**I.**

On December 3, 2010, Adams pleaded guilty to possession of a controlled substance with intent to deliver in Case No. 40,144-A

1

in the Gregg County (Texas) District Court. [DE 13-4; DE 13-5].[1] Adams was sentenced to a term of five years of confinement and was paroled on October 13, 2011. *Id*.

On October 24, 2012, Adams was arrested by Texas state authorities on charges of manufacturing/delivery of a controlled substance, unlawful possession of a firearm by a felon, two counts of tampering/fabricating physical evidence with intent to impair, and driving with a suspended license. *Id*.; [DE 13-3]. On October 25, 2012, a parole violation warrant was executed for Adams's violation of his parole in Case No. 40,144-A, and Adams remained in state custody on his parole violation. *Id*.

On April 24, 2013, a federal grand jury in the Eastern District of Texas issued an indictment charging Adams with being a felon in possession of a firearm on October 24, 2012 (the date of his Texas arrest) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *United States v. Adams*, No. 6:13-cr-037-JDK-KNM (E.D. Tex. 2013) at DE 1. Because Adams was in state custody in relation

---

[1] In his Response, Respondent relies upon documents and records attached to a Declaration of Kneyse G. Martin. However, while the documents themselves were submitted to the Court [DE 13], no affidavit was submitted with Respondent's Response. Even so, because there has been no objection to the submission of the documents for the Court's review, and the procedural history of Adams's prior convictions is not in dispute, the Court will consider Respondent's submission in determining whether or not Adams is entitled to relief.

2

to his parole violation, a writ of habeas corpus *ad prosequendum* was issued by the federal court in Texas on May 3, 2013. *Id*. at DE 7. Adams was arrested on his federal charges and appeared in federal court pursuant to the writ for his Initial Appearance and Arraignment on May 14, 2013. *Id*. at DE 7; DE 9.

On September 4, 2013, pursuant to a plea agreement with the United States, Adams pleaded guilty in federal court to possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). *Id*. at DE 24. On January 28, 2014, Adams was sentenced by United States District Court Judge Leonard E. Davis to a term of imprisonment of 120 months. *Id*. at DE 42. During the sentencing hearing, the following exchange occurred:

> THE COURT: All right. That motion is granted. Is there anything further from the Government?
>
> MR. BALDWIN: No, Your Honor. Thank you.
>
> THE COURT: From the Defense?
>
> MR. HAWK: There is one thing. It is in reference to jail custody, Your Honor. Paragraph 28 reflects that the date after his arrest, which was October 24th of 2012, TDC put a blue warrant on him for this offense. And to the extent possible, we would ask the Court to have his place of designation originally be TDC. We recognize it is only a little over six months, but we would ask that the first six months to be designated TDC, so it is possible to have that sentence concurrent since it is the same conduct.
>
> THE COURT: Is there any objection?
>
> MR. BALDWIN: No objection, Your Honor.

3

> THE COURT: All right. The Court will note and make a part of the judgment that the Defendant was in custody from October 24th, 2012 pursuant to a blue warrant; and at the -- and his place of confinement the Court hereby designates as from that period of October 24th, 2012 to May 14th, 2013 when he was writted into federal custody, that his place of confinement be Texas Department of Corrections for that approximate six-month period from October 24th, 2012 to May 14 of 2013.[2]

*Id*. at DE 48, at 9-10.

On January 31, 2014, Judge Davis entered a Judgment imposing the 120-month federal sentence, which included a recommendation "that the Bureau of Prisons designate the Texas Department of Criminal Justice – Institutional Division to be the place of service of this sentence, thereby making this sentence concurrent with the defendant's imprisonment or future term [of] imprisonment pursuant to the judgment in Docket Number 40,144-A, Possession of a Controlled Substance, 188th District Court, Gregg County, TX." *United States v. Adams*, No. 6:13-cr-037-JDK-KNM (E.D. Tex. 2013) at DE 42. On January 31, 2014, Adams was returned from his temporary custody of the USMS back to the custody of the state of Texas. [DE 13-6].

---

[2] The latter date (May 14, 2013) is the date Adams appeared in federal court pursuant to a writ of habeas corpus *ad prosequendum* for his Initial Appearance and Arraignment on his federal charges. *United States v. Adams*, No. 6:13-cr-037-JDK-KNM (E.D. Tex. 2013) at DE 7; DE 9.

4

On February 20, 2014, the Texas Department of Criminal Justice revoked Adams's parole in his 2010 case (No. 40,144-A) due to his January 2014 federal conviction. [DE 13-8]. Adams was remanded to the Texas Department of Corrections to serve the remainder of the 5-year sentence previously imposed in Case No. 40,144-A. The Texas Department of Criminal Justice applied prior custody credits towards Adams's state sentence for his time in custody from October 25, 2012, through October 15, 2015, the date that Adams was paroled from Texas custody and entered exclusive federal custody. *Id.; see also* [DE 13-9].

On July 31, 2017, Adams wrote to the federal sentencing court, explaining that he was "having trouble receiving the jail credit for my charge." *United States v. Adams*, No. 6:13-cr-037-JDK-KNM (E.D. Tex. 2013) at DE 49. Adams further stated that: "You ordered it to be given to me, yet the Bureau of Prisons says your order only 'recommends' that I receive it. The B.O.P. has denied it." *Id*. Adams then requests that the Court issue an order directing that he receive jail credit for his time in custody from October 24, 2012, through January 26, 2014 (his entire time in custody prior to pleading guilty in his federal case). *Id*.

By this time, Judge Davis had retired and Adams's case was assigned to United States District Court Judge Ron Clark On November 8, 2017, Judge Clark denied Adams's motion, noting Judge

5

Davis's recommendation that the BOP designate the state facility as the place of service of Adams's sentence (thereby making the sentence concurrent with Adams's imprisonment or future imprisonment pursuant to the judgment in Case No. 40,144-A), but ultimately concluding that the BOP is responsible for determining the amount of time to be credited, stating that "the BOP will calculate this time as well as any other time to which defendant is entitled to receive as credit against each federal sentence." *Id*. at DE 50. Judge Clark then construed Adams's motion as a motion to correct or reduce his sentence for arithmetical, technical, or other clear error and denied it as untimely. *Id*. Judge Clark also found that Adams's sentence was not the result of such an error, and further noted that "[t]he court no longer has the authority to amend the sentence, absent a motion by the Government." *Id*.[3]

---

[3] On May 9, 2018, the BOP contacted the federal sentencing court to clarify Judge Davis's intent regarding Adam's prior custody credit from October 14, 2012, though January 28, 2014. [DE 13-12]. In the correspondence, the BOP's Classification & Computation Specialist explained that Adams had indicated his belief that it was Judge Davis's intent to order credit from October 14, 2012, through January 28, 2014. However, since that time was applied to the state sentence, it was not applied to Adams's federal sentence in accordance with 18 U.S.C. § 3585(b). The Specialist noted that Adams's sentence is running concurrent with his state sentence as ordered in the Judgment but requested information regarding Judge Davis's intent with respect to the prior custody credit.

In response, the Probation Officer who prepared Adams's PSR noted Judge Davis's statement at sentencing indicating that Adams should receive credit for the approximate six-month period that he was in

On May 2, 2019, Adams filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, challenging the calculation of his federal sentence in light of Judge Davis's recommendation at sentencing. *See Adams v. United States*, 6:19-cv-186-JDK-KNM (E.D. Texas 2019). On September 30, 2020, the District Court adopted a Magistrate Judge's Report and Recommendation recommending denial of Adams's § 2255 motion because a habeas corpus petition under 28 U.S.C. § 2241 is the proper vehicle through which a federal prisoner can seek credit for prior custody. *Id*. at DE 6; DE 7.

Adams has now filed a § 2241 habeas petition challenging the BOP's calculation of his sentence in this Court. In his § 2241 petition, Adams argues that he is entitled to credit towards his federal sentence for his entire time in state custody from October 24, 2012, through January 28, 2014. [DE 1, at 7].[4] Adams points

---

state custody from October 24, 2012, through May 14, 2013. However, the Probation Officer further explained that Judge Davis had since retired and that on November 8, 2017, Judge Clark had denied Adams's request for credit for the time that he spent in custody from October 24, 2012, through January 26, 2014.

[4] As noted by Respondent [DE 13, at 2], although Adams's § 2241 petition states that he seeks credit for his time in custody beginning on October 24, **2013**, this appears to be a typographical error, as Adams was arrested by the State of Texas on October 24, **2012**. Like Respondent, the Court will presume that Adams seeks credit from the earlier date, as this was the date identified by Adams in his administrative grievances and is the date that was discussed at sentencing. [DE 1-1, 1-2].

7

to Judge Davis's statements as sentencing and in the Judgment recommending that Adams's federal sentence be concurrent with his term of imprisonment in Case No. 40, 144-A (his 2010 Texas case) and that the BOP designate the Texas facility to be the place of service of his federal sentence. [DE 1, at 6; DE 1-2]. According to Adams, in light of these recommendations, he is entitled to credit towards his federal sentence for his entire time spent in state custody from October 24, 2012, through January 28, 2014.

However, after a thorough review of Adams's motion, Respondent's Response, and the documentation regarding Adams's federal and state sentences, the Court concludes that Adams is not entitled to relief. Thus, his § 2241 petition will be denied.

## II. A.

In response to Adams's § 2241 petition, Respondent first argues that Adams's petition should be dismissed for failure to exhaust his administrative remedies prior to filing his petition. It has long been the rule that, before a prisoner may seek habeas relief under § 2241, he must first fully exhaust his administrative remedies within the BOP. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *see also Luedtke v. Berkebile*, 704 F. 3d 465, 466 (6th Cir. 2013); *Leslie v. United States*, 89 Fed. Appx. 960, 961 (6th Cir. 2004) ("[I]t is well established that federal prisoners are required to exhaust their

8

administrative remedies before filing a habeas corpus petition under § 2241."). Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006).[5]

According to Respondent, Adams has filed four administrative remedies related to the calculation of his sentence (Administrative Remedy Nos. 850753, 866594, 924692, and 947690), but only Administrative Remedy No. 9407690 was appealed to the final level. [DE 13, at 4]. In his petition, Adams indicates that he filed his final appeal with respect to Remedy No. 9407690 on October 31, 2018, and it was "denied under 18 U.S.C. § 3585(b)." [DE 1, at 2]. According to Respondent, Adams's appeal was not denied but was instead "rejected for not providing a copy of the Regional Appeal (BP-10) and/or a receipt, and/or for not providing a verified photocopy; and for failing to provide copies of the

---

[5] The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond. *See* 28 C.F.R. §§ 542.14(a) and 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1330.18 (Jan. 6, 2014).

Judgment referenced as an attachment to BP-11." [DE 13, at 4]. Respondent further claims that "Adams was provided an opportunity to resubmit the BP-11 appeal in proper form within 15 days of the date of the rejection notice [but] Adams did not appropriately refile his BP-11 appeal."

However, the documentation cited by Respondent indicates only that Adams's grievance was rejected on November 27, 2018. [DE 13-13]. Respondent did not attach the rejection notice allegedly sent to Adams, nor are the reasons for the rejection or the opportunity for Adams to resubmit his appeal evident from the document submitted by Respondent.

Failure to exhaust administrative remedies is an affirmative defense, thus the Defendants bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Because Adams claims to have fully exhausted Remedy No. 947690 and because the documentation submitted by Respondent on the issue is ambiguous, the Court declines to dismiss Adams's § 2241 petition for failure to exhaust his administrative remedies prior to filing his § 2241 petition.

**B.**

Even so, the Court concludes that Adams's § 2241 petition must be denied because his sentence has been calculated correctly, thus he is not entitled to relief. As an initial matter, Adams does not dispute that Texas authorities retained primary

10

jurisdiction over him until he was relinquished to federal custody on October 15, 2015. "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *see also Ponzi v. Fessenden*, 258 U.S. 254, 260-62 (1922). Adams was arrested by Texas authorities on October 24, 2012, for state offenses, then remained in state custody on a parole violation from his 2010 conviction. [DE 13-3]. Thus, Texas had primary jurisdiction over Adams.

Primary jurisdiction continues until a sovereign specifically relinquishes it, generally through release on bail, dismissal of charges, parole, or expiration of the sentence. *Cole*, 416 F.3d at 897. Adams's temporary transfer into federal custody through a writ of habeas corpus *ad prosequendum* did not subordinate the state's primary jurisdiction. *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000) ("[A] prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner.") (superseded on other grounds by statute as recognized in *United States v. Saintville*, 218 F.3d 246 (3d Cir. 2000)). Thus, because Texas enjoyed primary jurisdiction over Adams while he was in the custody of the United States

11

Marshals for purposes of his federal proceedings pursuant to a writ of habeas corpus *ad prosequendum*, he was simply "on loan" to the federal authorities and primary jurisdiction over him remained with the State of Texas.

"The general rule as to place of incarceration is that regardless of the order in which sentences are imposed, the sentence of the sovereign which has primary jurisdiction over the defendant is served first." *Shumate v. United States*, 893 F. Supp. 137, 139 (N.D.N.Y. 1995); *see also Jones v. Eichenlaub*, No. 08-CV-13624, 2010 WL 2670920, at *2 (E.D. Mich. 2010)) (*citing Thomas v. Whalen*, 962 F.2d 358, 361 n.3 (4th Cir. 1992)). Thus, Adams was required to serve the sentence of the sovereign with primary jurisdiction – in this case, the State of Texas – first.

The sentence computation prepared by the BOP with respect to Adams's 120-month federal sentence commences his sentence on January 28, 2014, the date that it was imposed. [DE 1-4]. Adams was given one day of prior custody credit for his time in custody on October 24, 2012, the date of his arrest by Texas authorities, as he was not given credit for this time towards his state sentence by the Texas Department of Criminal Justice. *Id*. On September 26, 2016, the BOP found Adams ineligible for *nunc pro tunc* designation

since his federal sentence was already running concurrent to his state sentence.[6] [DE 13-10].

Adams has earned 133 days of good conduct time and is projected to earn 351 days of good conduct time. [DE 1-4]. In light of these factors and considering these adjustments, Adams's current projected release date is February 9, 2023. *Id.*

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is determined 18 U.S.C. § 3585, which provides as follows:

> (a) A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

---

[6] Under 18 U.S.C. § 3621(b), the BOP is granted discretionary placement authority to designate the place of a federal prisoner's imprisonment. Included in this authority is discretion to designate a state prison *nunc pro tunc* as the facility for the start of service of a federal sentence, resulting in a concurrent federal sentence. *Barden v. Keohane*, 921 F. 2d 476 (3d Cir. 1990) *See also* BOP Program Statement 5160.05 (implementing the rule set forth in *Barden*). The BOP found that Adams was ineligible for *nunc pro tunc* designation because Adams's federal sentence was already running concurrently to his state sentence. [DE 13-10]. Accordingly, Adams has received *nunc pro tunc* federal credit from the date the federal sentence was imposed, January 28, 2014, notwithstanding that he was under primary state custody from January 28, 2014, through October 15, 2015.

13

>    (1)  as a result of the offense for which the sentence was imposed; or
>
>    (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

If a federal sentence is ordered to run concurrently with pre-existing state sentence (as was the case here), the federal sentence begins to run when the federal sentence is imposed. Cf. *Doan v. Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001). Thus, the BOP correctly determined that Adams's federal sentence began to run on January 28, 2014, the date it was imposed. [DE 1-4].

Section 3585(b) establishes whether a defendant may obtain credit for time spent in custody before his sentence commences. In his § 2241 petition, Adams seeks credit against his federal sentence for his time spent in custody from October 24, 2012 (the date that he was arrested by the State of Texas), through January 28, 2014 (the date that he was sentenced).[7] However, Adams was given credit for his time in custody from October 25, 2012, through October 15, 2015, by the Texas Department of Criminal Justice

---

[7] As reflected by Adams's Sentence Monitoring Computation Data Sheet prepared by the BOP, the BOP has applied custody credit towards Adams's federal sentence for October 24, 2012, as this time was not applied towards any other sentence. [DE 1-4].

14

towards the remainder of his 5-year sentence for his 2010 Texas conviction in Case No. 40,144-A. [DE 13-8]. Because Adams's time in custody from October 25, 2012, through January 28, 2014, was credited against his state sentence, Section 3585(b) plainly forbids counting it a second time against his federal sentence. *United States v. Wilson*, 503 U.S. 329, 337 (1992) (". . . Congress made clear that a defendant could not receive a double credit for his detention time."); *see also Huffman v. Perez*, No. 99-6700, 2000 WL 1478368 (6th Cir. Sept. 27, 2000); *Broadwater v. Sanders*, 59 F. App'x 112, 113-14 (6th Cir. 2003).

Adams points to the discussion at sentencing regarding his "credit" for his time in custody from October 24, 2012, through May 14, 2013, as well as the Judgment's designation of the state facility as the place of service of his sentence, and argues that he is entitled to prior custody credit for his entire time in state custody from October 24, 2012, through January 28, 2013. However, notwithstanding Judge Davis's recommendations at sentencing, it is well established that only the BOP has the authority to determine when a federal sentence begins and what prior custody credits the inmate is entitled to receive. *Wilson*, 503 U.S. at 335; *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007) ("it falls to BOP, not the district judge, to determine when a sentence is deemed to 'commence.'"); *United States v. Crozier*, 259 F.3d 503, 520 (6th

Cir. 2001) ("Power to grant credit for time served lies solely with Attorney General and Bureau of Prisons."); *United States v. Shockley*, 21 F. App'x 353, 359 (6th Cir. 2001) ("[I]t is the Attorney General through the Bureau of Prisons, and not the district court, that is authorized to grant a defendant credit for time served prior to sentencing under 18 U.S.C. § 3585."). Therefore, "only the BOP and the Attorney General, and not the district court, are authorized to grant credit for time served under § 3585(b)." *United States v. Lytle*, 565 F. App'x 386, 392 (6th Cir. 2014).

Under § 3585(a) a federal sentence cannot begin to run earlier than the date of its imposition, and a sentencing court is without authority to "backdate" a federal sentence to an earlier date. *Wells*, 473 F.3d at 645 ("The district judge had no statutory authority to order that the defendant's federal sentence should 'commence' [before the date his sentence was imposed]."); *United States v. Labeille-Soto*, 163 F.3d 93, 98-99 (2d Cir. 1998). Thus, where, as here, the sentencing court directs that the defendant's federal sentence is to run concurrently with a previously-imposed sentence, the federal sentence runs concurrently only with the portion of the state sentence that remains to be served. *Staley v. Patton*, No. 0:07-cv-122-HRW, 2009 WL 256745, at * 2-3 (E.D. Ky. Feb. 2, 2009); *Belcher v. Cauley*, No. 0: 08-132-HRW, 2009 WL

16

464932, at *2 (E.D. Ky. Feb. 24, 2009) ("Even where a sentencing court orders a federal sentence to run concurrently with a pre-existing state sentence, the federal sentence is deemed to run concurrently only with the *undischarged* portion of the prior state conviction."). Therefore, the BOP correctly concluded that Adams's federal sentence commenced running on January 28, 2014, the date that it was imposed.

Unfortunately, it remains true that "[c]onfusion sometimes arises, as it did here, when a defendant requests that the district court award credit for time served and the court purports to grant or deny this request at sentencing." *In re United States Bureau of Prisons, Dep't of Just.*, 918 F.3d 431, 439 (5th Cir. 2019). However, "[b]ecause the district court lacks the authority to award or deny credit, the BOP is not bound by its decision." *Id.* (citation omitted). While the sentencing court may achieve similar ends by adjusting a defendant's sentence under § 5G1.3(b) or § 5K2.23 of the United States Sentencing Guidelines, it "must calculate the defendant's final sentence itself; it cannot simply order the BOP to award credit." *Id.* See also *Barker v. Barnhart*, No. 18-5969, 2019 WL 4391453, at *3 (6th Cir. June 4, 2019); *United States v. Gaskins*, 393 F. App'x 910, 914 (3d Cir. 2010).

Finally, although not presented in Adams's § 2241 petition, Respondent's Response discusses two "exception[s]" to § 3585(b)'s

17

rule prohibiting double credit. [DE 13, at 12-14 (discussing *Willis v. United States,* 438 F.2d 923 (5th Cir. 1971) (per curiam), and *Kayfez v. Gasele,* 993 F.2d 1288 (7th Cir. 1993)]. Both of these exceptions allow for federal prior custody credit for time spent in non-federal presentence custody in certain specific circumstances, notwithstanding the prohibition on "double counting." *See generally* BOP Program Statement ("PS") 5880.28.

However, the Court agrees with Respondent's argument (to which Adams did not respond) that neither exception applies here because the time for which Adams seeks credit was not presentence time with respect to his state sentence. Adams's original state sentence began in 2010, [DE 13-5], and his subsequent time in state custody from October 25, 2012, through October 15, 2015 (after violating his state parole) was a continuation of his original state sentence. Because this time in state custody is not "pre-sentence" time, neither *Willis* nor *Kayfez* apply, as those decisions only afford relief for time spent in custody before, not after, the state sentence is imposed. PS 5880.28 Ch. I § 3(c) at pg. 1-14A; *see also Childs v. Ortiz*, No. CV 18-11410 (RBK), 2021 WL 3706734, at *4 (D.N.J. Aug. 20, 2021) ("…*Kayfez* requires *presentence* state time to apply.") (citing *Perry-Bey v. Zuniga*, No. 17-133, 2018 WL 5442618, at *5 (W.D. Pa. Oct. 29, 2018)) (emphasis in original).

Because Adams received credit against his prior state sentence for his time in custody from October 25, 2012, through January 28, 2014, Section 3585(b) forbids counting this time a second time against his federal sentence. *Wilson*, 503 U.S. at 337. Thus, because Adams's concurrent federal sentence did not commence until January 28, 2014 (the date that it was imposed), the BOP has properly denied Adams's request for additional prior custody credits under § 3585(b).

For all these reasons, it is hereby **ORDERED** as follows:

(1) Adams's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 [DE 1] is **DENIED**;

(2) This action is **DISMISSED** and **STRICKEN** from the Court's docket; and

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This 23rd day of February, 2022.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

19